UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JANE A. BISHOP, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:15-cv-102 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Jane Bishop seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court reverses and remands this case to the Social Security Administration for further proceedings.

Ms. Bishop applied for disability insurance benefits and an administrative law judge decided that Ms. Bishop isn't disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d). The ALJ's decision became the Commissioner's final decision when the Appeals Counsel denied Ms. Bishop's request for review. This appeal followed.

Ms. Bishop awoke one day with back pain that she testified prevented her from sitting or standing for extended periods of time and from doing all but basic household chores. Ms. Bishop already suffered from depression and anxiety, which worsened as her pain and immobility encumbered her.

1

Applying the five-step evaluation of disability described under 20 C.F.R. § 404.1520, the ALJ found that: 1) Ms. Bishop isn't engaged in substantial gainful activity; 2) Ms. Bishop has a severe impairment – degenerative disc disease of the lumbar spine; 3) Ms. Bishop doesn't have an impairment that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and 4) Ms. Bishop has the residual functional capacity to perform sedentary work and is capable of her previous work as a receptionist, reservations agent, medical secretary, or medical transcriptionist. Having found that Ms. Bishop could perform her previous work, the ALJ didn't need to consider whether she could perform any work at all in the national economy (the fifth stage of the analysis).

The issue before the court isn't whether Ms. Bishop is disabled, but whether substantial evidence supports the ALJ's decision that she isn't. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d at 1160. In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but it "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v.

Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160. The ALJ hasn't done so in this case.

The ALJ's analysis is defective at his step four assessment of Ms. Bishop's residual functional capacity (the most that Ms. Bishop can do despite her limitations). 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). To gauge Ms. Bishop's capacity for work, the ALJ needed to assess the existence and extent of her pain. In assessing pain, an ALJ first evaluates whether a claimant's impairments "could reasonably be expected to produce the individual's pain or other symptoms" and second, the severity of that pain, particularly the extent to which the claimant's "alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." SSR 96-7p.[1] The ALJ determined that Ms. Bishop's testimony met the first part of this equation but not the second. (A.R. 17).

Four parts of the ALJ's assessment lacked the necessary logical bridge: (1) the ALJ's decision to discount the weight of medical opinions from Ms. Bishop's treating physician; (2) the ALJ's decision not to include psychological ailments

---

[1] This Social Security regulation has since been superseded by SSR 16-3p, but the old regulation was in force at the time of the Commissioner's decision and the difference between the two is one of style, not substance.

3

in his analysis; (3) the ALJ's determination that Ms. Bishop's statements about the intensity, persistence, and limiting effects of her symptoms aren't credible; and (4) the conclusions about vocations available to Ms. Bishop based on the vocational expert's testimony.

Under the "treating physician" rule, the ALJ must give more weight to opinions from treating sources than non-treating sources because of their ability "to provide a detailed, longitudinal picture" of a claimant's impairments. 20 C.F.R. § 404.1527(c)(2). If the ALJ finds that a treating source's opinion on the nature and severity of impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the treating physician's opinion deserves "controlling weight." *Id.*

The ALJ's rationale for affording little weight to the opinion of treating physician Dr. David Miller opinion is perfunctory. The ALJ said Dr. Miller's opinion "lacks any degree of specificity with regard to any functional limitations or restrictions." (A.R. 18). But Dr. Miller's letter is specific, saying that Ms. Bishop's "persistent, severe pain [ ] is rated as an 8-10 out of 10" and describing her "severe thoracolumbar scoliosis with resulting moderate to severe lumbar spinal stenosis." (A.R. 347). The letter lists the various medications Ms. Bishop takes to manage her pain.

Dr. Miller's notes support each conclusion in the letter. Despite the pain medications that Ms. Bishop was taking, notes from April 1, 2013 and March 8, 2013 show that Ms. Bishop still suffered from intense pain. (A.R. 354, 360). The

4

medication improved the chronic pain, (A.R. 354, 360) but there's no indication it made her able to tolerate a work environment. The ALJ doesn't explain why Dr. Miller's conclusions should be discounted despite his ongoing and thorough treatment relationship with Ms. Bishop and the notes Dr. Miller provided to support his conclusions. The ALJ's decision to discount this opinion violates the regulation.

Residual functional capacity analysis must include medically determinable impairments that aren't "severe." § 404.1545(a)(2). The ALJ didn't discuss Ms. Bishop's depression and anxiety in this section even though he did so in his analysis of which impairments are "severe." (A.R. 15). The record contains substantial evidence that Ms. Bishop's depression and anxiety aren't "severe" as defined under the act, but those conditions still exist and so the ALJ should have considered them to the extent they limit Ms. Bishop's residual functional capacity under 20 C.F.R. § 404.1545(c).

There was no logical bridge between the evidence on the record and the ALJ's conclusion that Ms. Bishop's "statements concerning the intensity, persistence and limiting effects of these symptoms aren't credible to the extent they are inconsistent with the residual functional capacity assessment." (A.R. 17).

An ALJ's credibility determinations "are entitled to special deference." Scheck v. Barnhart, 357 F.3d 697, 703 (7th Cir. 2004). This is especially so because "[a]pplicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's

5

testimony on the basis of other evidence in the case." Johnson v. Barnhart, 449 F.3d 804, 805 (7th Cir. 2006). Despite this deference, the ALJ must still provide a "logical bridge between the evidence and the ALJ's conclusion" about a claimant's credibility. Minnick v. Colvin, 775 F.3d 929, 937 (7th Cir. 2015).

The ALJ must decide whether Ms. Bishop's alleged functional limitations diminish her capacity for basic work to the extent that they "can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." SSR 96-7p. His analysis of the issue begins with the kind of "opaque boilerplate" criticized in the case law, *see* Bjornson v. Astrue, 671 F.3d 640, 644 (7th Cir. 2012); Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), but then goes on to explain with greater detail how the evidence undercuts Ms. Bishop's statement about her limitations.

First, the ALJ refers to Ms. Bishop's daily activities and finds that her abilities to prepare meals, do dishes, maintain her personal hygiene, volunteer at hospice care, go to church, shop, read, watch television, and drive are evidence that statements about her debilitations aren't credible. Ms. Bishop, however, explained these limitations in ways that are perfectly consistent with her statement about the severity of her symptoms. Ms. Bishop's hospice volunteer-work consisted of visiting and talking with a patient and bringing chocolate to her. Nothing in that activity would require her to sit or to stand for extended periods, require significant concentration, or necessarily trigger social anxiety. Her food preparation is always basic and takes under half an hour. Ms. Bishop must leave more intensive chores, such as vacuuming and mopping, to her

6

husband. Each activity involves minimal impact on her back, allows her to sit, stand, or lie down as she needs, and can be conducted despite anxiety and depression. The ALJ didn't adequately explain how these activities were inconsistent with Ms. Bishop's testimony about her limitations.

Second, the ALJ determined that none of the medical opinions found Ms. Bishop to be limited beyond what he described in the residual functional capacity analysis. As already explained, this analysis should have accounted for Ms. Bishop's pain intensity and psychological problems. Because Dr. Miller's opinion supports Ms. Bishop's statements about the severity of her pain, the ALJ doesn't adequately explain how Dr. Miller's opinion is inconsistent with Ms. Bishop's testimony.

The ALJ's residual functional capacity analysis undervalued the opinion of Ms. Bishop's treating physician, didn't consider Ms. Bishop's psychological impediments, and improperly discounted Ms. Bishop's credibility.

The ALJ's next step was assessing whether Ms. Bishop can perform past relevant work. 20 C.F.R. § 404.1520(a)(iv). In making this assessment, the ALJ relied on the testimony of vocational expert Ronald Malik. The ALJ took Mr. Malik's testimony as evidence that Ms. Bishop, having the capacity outlined in his earlier analysis, can do the work of a receptionist, a medical secretary, a reservations agent, or a medical transcriptionist. First, Ms. Bishop would have enough capacity for these vocations only if the flaws in the capacity analysis described earlier are ignored. Had the ALJ given credence to Ms. Bishop's explanations of her pain and inability to sit for more than fifteen to twenty

7

minutes, not to mention her social anxiety and bouts of depression, he might have rejected these vocations as viable options for Ms. Bishop.

The ALJ also incorrectly assumed that even if Ms. Bishop couldn't sit for more than fifteen to twenty minutes, "she would still be able to perform her work as a receptionist and a medical secretary." During questioning by Ms. Bishop's counsel, Mr. Malik explained that an impairment that results in Ms. Bishop being off task at least ten percent of the time would make it impossible for her to perform her work. If Ms. Bishop's attention is diverted by her need to stand every two to three minutes every fifteen to twenty minutes, her attention would be diverted for at least ten percent of the time. If Ms. Bishop's attention is diverted by her chronic fatigue for 45 to 90 minutes a day, the ten percent threshold would be exceeded. If Ms. Bishop's anxiety grips her for one to two hours every two to three days, it would push her further past that limit. If Ms. Bishop's social anxiety makes her withdraw in a position in which customer service is key, she is further inhibited from her work. A single one of these impairments might not take her off task for more than ten percent of the time, but all of them combined must do so. The testimony of the vocational expert doesn't support the ALJ's conclusion that Ms. Bishop could work as a receptionist or medical secretary even if she needed to stand up every ten to fifteen minutes.

The ALJ's findings about the severity, persistence, and limiting effects of Ms. Bishop's physical and mental impairments aren't supported by substantial evidence or an adequate discussion of the issues presented. When a court can't

8

see an "accurate and logical bridge between the evidence and the result," remand is required. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

Accordingly, the final decision of the Commissioner of Social Security is VACATED and the matter REMANDED.

SO ORDERED.

ENTERED: September 7, 2016

/s / Robert L. Miller, Jr.
Judge
United States District Court